# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

PGA EUROPEAN TOUR,

      Movant,

      v.

LIV GOLF, INC.,

      Respondent.

Case No. 3:22-mc-16-TJC-LLL

_____

## NON-PARTY MOVANT PGA EUROPEAN TOUR'S MOTION
## TO QUASH LIV GOLF, INC.'S RULE 45 SUBPOENA
## WITH INCORPORATED MEMORANDUM OF LAW



2022 NOV 16  PM 3:16
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

FILED

**TABLE OF CONTENTS**

Page

INTRODUCTION..............................................................................................1

BACKGROUND...............................................................................................3

I.    THE UNDERLYING LITIGATION PENDING IN THE
      NORTHERN DISTRICT OF CALIFORNIA AND THE
      SUBPOENA AT ISSUE .............................................................................3

II.   EUROPEAN TOUR DOES NOT CONDUCT BUSINESS IN THE
      STATE OF FLORIDA ...............................................................................5

III.  EUROPEAN TOUR'S STRATEGIC ALLIANCE WITH PGA
      TOUR DOES NOT CONFER JURISDICTION OVER EUROPEAN
      TOUR IN THE STATE OF FLORIDA ........................................................6

IV.   PGA TOUR COMMISSIONER JAY MONAHAN HAS NO
      AUTHORITY TO CONDUCT BUSINESS ON BEHALF OF
      EUROPEAN TOUR...................................................................................7

MEMORANDUM OF LAW...............................................................................8

I.    LEGAL STANDARD ...............................................................................8

II.   THE SUBPOENA VIOLATES RULE 45 AND APPLICABLE LAW .........9

      A.    The Subpoena Is Invalid On Its Face for Failure to Satisfy Rule
            45(c)(1)'s Geographical Limits For Depositions. ..................................9

            1.    The Subpoena Requires Compliance More Than 100
                  Miles From European Tour's Headquarters, In Violation
                  of Rule 45(c)(1)..........................................................................9

            2.    The Subpoena Requires Compliance More Than 100
                  Miles From Where European Tour "Regularly Transacts
                  Business in Person," In Violation of Rule 45(c)(1)....................10

      B.    The Subpoena's Alternative Requirement of Deposition by Video
            Conference Cannot Remedy its Facial Invalidity................................13

      C.    The Subpoena Also Fails To Satisfy Rule 45(c)(2)'s Geographical
            Limits For Production of Documents..................................................15

i

      D.    The Court Cannot Compel Compliance With the Subpoena
             Because It Lacks Personal Jurisdiction Over U.K.-Based
             European Tour. ................................................................................. 17

III.   PLAINTIFF'S PENDING HAGUE CONVENTION REQUEST IS
      THE APPROPRIATE VEHICLE FOR DISCOVERY FROM
      EUROPEAN TOUR. .................................................................................. 21

CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, ("*In re 3M I*")
    No. 3:19-MD-2885, 2020 WL 5578428 (N.D. Fla. Feb. 18, 2020) ...................22

*In re 3M Combat Arms Earplug Prod. Liab. Litig.* ("*In re 3M II*"),
    No. 3:19-MD-2885, 2022 WL 504451 (N.D. Fla. Feb. 18, 2022) .......................15

*Bernardele v. Bonorino*,
    608 F. Supp. 2d 1313 (S.D. Fla. 2009)................................................................19

*Bostian v. Suhor Indus., Inc.*,
    No. 07-CV-151-GFK-FHM, 2007 WL 3005177 (N.D. Okla. Oct. 12,
    2007) ...................................................................................................................11

*Broumand v. Joseph*,
    522 F. Supp. 3d 8 (S.D.N.Y. 2021) .............................................................13,14

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000)..........................................................................13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...........................................................................................18

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
    593 F.3d 1249 (11th Cir. 2010)..........................................................................21

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
    No. 2:04-cv-793, 2015 WL 13034991 (S.D. Ohio June 30, 2015) .......................11

*Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*,
    No. 5:19-CV-381-TKW/MJF, 2020 WL 6127079 (N.D. Fla. May 1,
    2020) .....................................................................................................................8

*Euclid Fish Co. v. Cape Fla. Seafood*,
    No. 21-MC-22310, 2021 WL 4976530, at *7 (S.D. Fla. Aug. 20,
    2021), *report and recommendation adopted*, No. 21-22310-MC,
    2021 WL 4145207 (S.D. Fla. Sept. 13, 2021)...............................................18,24

*Europlay Capital Advisors, LLC v. Does*,
    323 F.R.D. 628 (C.D. Cal. Feb. 5, 2018).........................................................9,10

*Gubarev v. BuzzFeed, Inc.*,
   No. 17-cv-60426, 2017 WL 5634935 (S.D. Fla. Aug. 15, 2017)..........................25

*Heissenberg v. Doe*,
   No. 21-80716-CIV, 2021 WL 2621100 (S.D. Fla. June 24, 2021)................. 2,8,17

*Horizon Aggressive Growth, LP. v. Rothstein–Kass, PA*,
   421 F.3d 1162 (11th Cir. 2005)...........................................................................19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...........................................................................................18

*Jones v. Jasper Wyman & Son*,
   No. 1:20-CV-00383-JAW, 2022 WL 16820442 (D. Me. Nov. 8,
   2022) ...................................................................................................................12

*Jones, et al. v. PGA TOUR, Inc.*,
   No. 22-CV-04486-BLF-SVK (N.D. Cal ......................................................3,4,21

*MacGinnitie v. Hobbs Grp., LLC*,
   420 F.3d 1234 (11th Cir. 2005)............................................................................9

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990)..........................................................................20

*Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*,
   939 F.3d 1145 (11th Cir. 2019)................................................................ 13,14,15

*Merlin Petrol. Co. v. Sarabia*,
   2016 WL 9244728 (M.D. Fla. Aug. 4, 2016) .....................................................16

*Ortiz v. Harrell*,
   No. 21-14219-CIV, 2022 WL 457856 (S.D. Fla. Feb. 14, 2022) .........................10

*Pearlstein v. BlackBerry Ltd.*,
   332 F.R.D. 117 (S.D.N.Y. 2019).......................................................................22

*Ping-Kuo Lin v. Horan Capital Mgmt. LLC*,
   No. 14-cv-5202, 2014 WL 3974585 (S.D.N.Y. Aug. 13, 2014)...........................15

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999)................................................................... 2,8,17

*Procaps S.A. v. Patheon Inc.*,
   No. 12-24356-CIV, 2015 WL 1722481 (S.D. Fla. Apr. 15, 2015) ......................10

*Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC,*
    18-21445-CIV, 2019 WL 1112553 (S.D. Fla. Jan. 9, 2019) .............................9,17

*Regents of Univ. of California v. Kohne,*
    166 F.R.D. 463 (S.D. Cal. 1996), dismissed, 113 F.3d 1256 (Fed.
    Cir. 1997) ................................................................................................................11

*Sabo v. Carnival Corp.,*
    762 F.3d 1330 (11th Cir. 2014)..............................................................................19

*Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.,*
    No. 20-21964-CIV, 2021 WL 9440378 (S.D. Fla. June 10, 2021) .......................10

*Sloss Indus. Corp. v. Eurisol,*
    488 F.3d 922 (11th Cir. 2007) ...............................................................................17

*Société Nationale Industrielle Aérospatiale v. U.S. District Court for*
    *the Southern District of Iowa,*
    482 U.S. 522 (1987) ................................................................................................22

*Tiffany (NJ) LLC v. Qi Andrew,*
    276 F.R.D. 143 (S.D.N.Y. 2011)............................................................................24

*United Tech. Corp. v. Mazer,*
    556 F.3d 1260 (11th Cir. 2009)...........................................................................3,17

*Vermeulen v. Renault, U.S.A., Inc.,*
    985 F.2d 1534 (11th Cir. 1993)..............................................................................20

*Wane v. Diallo,*
    No. 8:20-CV-171-T-02CPT, 2020 WL 13413993 (M.D. Fla. Dec. 14,
    2020) ........................................................................................................................16

*White v. Alcon Film Fund, LLC,*
    No. 1:13-cv-1163-TCB, 2013 WL 12063923 (N.D. Ga. July 9, 2013).................13

## FEDERAL STATUTES

Sherman Antitrust Act..............................................................................................3

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 34(c) .................................................................................................8

Fed. R. Civ. P. 45 *et seq.* ..................................................................................*passim*

## STATE STATUTES

Fla. Stat.
§ 48.193(1)..................................................................................................2,18
§ 48.193(1)(a)............................................................................................. 18,19
§ 48.193(2)....................................................................................................17

## OTHER AUTHORITIES

European Tour, *DP World Tour, PGA Tour Expand and Strengthen Alliance* (June 28, 2022), https://www.europeantour.com/dpworld-tour/news/articles/detail/dp-world-tour-pga-tour-expand-and-strengthen-alliance/ ..............................................................................................6

European Tour, *European Tour and PGA Tour Announce Landmark Strategic Alliance* (Nov. 27, 2020), https://www.europeantour.com/dpworld-tour/news/articles/detail/european-tour-pga-tour-announce-strategic-alliance/ ...............................................................................................6

European Tour, *PGA Tour and European Tour Announce Details of Historic Strategic Alliance* (Aug. 3, 2021), https://www.europeantour.com/dpworld-tour/news/articles/detail/pga-tour-and-european-tour-announce-details-of-historic-strategic-alliance/; ..................................................................6

United States Constitution Fourteenth Amendment ...........................................2,17

## MOTION TO QUASH

United Kingdom-based non-party PGA European Tour ("European Tour"), by and through its undersigned counsel appearing specially for the purpose of this Motion,[1] respectfully moves the Court to quash Plaintiff LIV Golf, Inc.'s ("LIV") Rule 45 Subpoena ("Subpoena") for failure to meet the requirements of Federal Rule of Civil Procedure 45(c) and for lack of personal jurisdiction, among other legal defects. The discovery mechanisms established by the Hague Convention are the proper vehicle for any discovery from European Tour. To that end, LIV has already moved the Northern District of California in the underlying action to issue Letters Rogatory pursuant to the Hague Convention for discovery from the European Tour, and the court has deemed the request "warranted" and indicated that it is prepared to grant the request. In support of its Motion, European Tour states as follows:

## INTRODUCTION

Plaintiff LIV seeks to haul non-party European Tour[2] into the Middle District of Florida from its headquarters over 4,000 miles away in Surrey, England, on the basis of a facially defective Rule 45 Subpoena. This violates Federal Rule of Civil Procedure 45, the law of personal jurisdiction, due process, and the principles of international comity. On these grounds, the Subpoena cannot stand.

---

[1] Respectfully, European Tour makes this special appearance for the purpose of contesting personal jurisdiction and quashing a Rule 45 subpoena. In making this Motion, European Tour does not concede that this Court or any court of the United States has personal jurisdiction over it.

[2] The legal name for the moving party is PGA European Tour, which is registered in England and Wales as a private company limited by guarantee. The Subpoena incorrectly refers to the entity as "DPWorld Tour".

The Court need look no further than the face of the Subpoena to quash it. This Court "must" quash the Subpoena because it requires European Tour to "comply beyond the geographical limits specified in Rule 45(c)." *See* Fed. R. Civ. P. 45(d)(3)(A)(ii). Specifically, it seeks a deposition and production of documents from European Tour in Jacksonville, Florida, which is located over "100 miles of where [European Tour] resides, is employed, or regularly transacts business in person" in England. *See* Fed. R. Civ. P. 45(c). The Court's inquiry need go no further, as Rule 45 grants the Court no discretion in quashing a subpoena that violates its geographic limits. *See* Fed. R. Civ. P. 45(d)(3)(A).

Nonetheless, myriad additional grounds for quashing the Subpoena also exist. First, the Court does not have personal jurisdiction over European Tour, which is required to enforce such a subpoena. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999); *Heissenberg v. Doe*, No. 21-80716-CIV, 2021 WL 2621100, at *2 (S.D. Fla. June 24, 2021). Because European Tour is not "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency" in Florida, this state's long-arm statute confers no personal jurisdiction over European Tour. *See* Fla. Stat. § 48.193(1). As explained below, European Tour does not host or operate tournaments in Florida, has no offices in Florida, has no licenses or registrations to do business in Florida, and has generated no income from business activities in Florida. Moreover, finding personal jurisdiction in the absence of sufficient "minimum contacts" with Florida would also violate the due process clause of the Fourteenth Amendment to the United States Constitution.

*See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274–75 (11th Cir. 2009).

Second, the principles of international comity weigh in favor of LIV utilizing the Hague Convention to obtain discovery from European Tour, a process which LIV and the other Plaintiffs have already initiated in the underlying lawsuit. *See Jones, et al. v. PGA TOUR, Inc.*, No. 22-CV-04486-BLF-SVK (N.D. Cal.) ("LIV Action"), ECF No. 154 (Plaintiff's motion for issuance of letters rogatory pursuant to the Hague Convention), 156 (court order finding that the letters are "warranted," but requiring Plaintiffs to make court-suggested edits to the letters before the motion is granted).

## BACKGROUND

### I.  THE UNDERLYING LITIGATION PENDING IN THE NORTHERN DISTRICT OF CALIFORNIA AND THE SUBPOENA AT ISSUE

European Tour is not a party to the underlying litigation. In August 2022, eight individual professional golfers sued PGA TOUR, Inc. ("PGA TOUR"), a Maryland Corporation with its principal place of business in Ponte Vedra Beach, Florida, in the U.S. District Court for the Northern District of California. LIV Action, ECF No. 1. LIV, a Delaware corporation and a professional golf tour financed by the Public Investment Fund, the sovereign wealth fund of Saudi Arabia, later joined as a plaintiff in the lawsuit in an amended complaint on August 26, 2022. LIV and only three of the individual golfers (collectively "Plaintiffs") remained as plaintiffs after the other individuals withdrew from the lawsuit. *Id.*, ECF No. 83.

Plaintiffs allege that PGA TOUR committed antitrust violations in contravention of the Sherman Antitrust Act and California law, including by

"orchestrat[ing] a group boycott with the European Tour." *Id.* at 2. Trial is set for January 8, 2024.

On October 25, 2022, a process server for LIV left the Subpoena for deposition and for production of documents with lobby staff at the PGA TOUR headquarters in Ponte Vedra Beach. *See* Ex. A (Subpoena). Although the package was addressed to PGA TOUR Commissioner Jay Monahan, LIV's Subpoena is directed to European Tour, not Jay Monahan in his individual capacity. *See id.* The Subpoena purports to command the attendance of a European Tour representative at a deposition on January 30, 2023 to be held at a Veritext office in Jacksonville, Florida, or by videoconference. It also commanded the production at the same place of 37 distinct categories of documents by November 11, 2022.[3] The Veritext office in Jacksonville is over 4,000 miles away from European Tour's corporate headquarters in England.

On November 10, 2022, LIV filed a Motion for Issuance of Letters Rogatory Pursuant to the Hague Convention in the underlying lawsuit, seeking to obtain discovery in England from non-parties European Tour and its CEO Keith Pelley. *See* LIV Action, ECF No. 154. On November 14, the court issued an order finding the issuance of the letters "warranted," but requiring Plaintiffs to make some court-suggested edits to the letters themselves before the motion is granted. *Id.*, ECF No. 156.

---

[3] After counsel met and conferred, LIV granted European Tour an extension until noon Pacific Time on November 16, 2022 to respond to the Subpoena, including filing a motion to quash.

## II.   EUROPEAN TOUR DOES NOT CONDUCT BUSINESS IN THE STATE OF FLORIDA

Non-party European Tour operates the leading professional golf tour in Europe. It is a player-owned professional golfers' association that is headquartered in Surrey, England. (Declaration of Keith Waters ("Decl.") ¶ 2). European Tour was incorporated in 1984 by the British-based Professional Golfers' Association, which is unaffiliated with U.S.-based PGA TOUR. That association had operated a European golf tour since 1972. (*Id.* ¶ 5). European Tour operates golf tournaments mainly throughout Europe and the Middle East, but not in the U.S. (*Id.* ¶ 6). The three golf tours that European Tour operates and/or sanctions are the elite DP World Tour, the developmental Challenge Tour and, for over-50s, the Legends Tour. (*Id.*). Each tour consists of a number of golf tournaments in which players compete for prize money and a higher position in that tour's rankings. European Tour's player-members are independent contractors and come from all across the globe. (*Id.*).

Virtually all of European Tour's business and operations take place in Europe and the Middle East in relation to its European-based and Middle East-based tournaments. (*Id.* ¶ 8). None of European Tour's business and operations take place in Florida. (*Id.*).

European Tour is a distinct entity from PGA TOUR. (*Id.* ¶ 7). PGA TOUR is a Florida-based corporation that operates golf tournaments primarily in the United States. (*Id.*). In contrast, European Tour:

(1) does <u>not host or operate</u> any tournaments in Florida;

(2) has <u>no offices</u> in Florida;

(3) has <u>no licenses or registrations</u> to do business in Florida; and

(4) has generated <u>no income</u> from business activities in Florida.

(*Id.* ¶ 9).

During the past five years, European Tour executives, while on European Tour business, have only made approximately 11 visits to Ponte Vedra Beach or Daytona Beach, and 7 additional visits to other locations in Florida. (*Id.* ¶ 10).

**III.   EUROPEAN TOUR'S STRATEGIC ALLIANCE WITH PGA TOUR DOES NOT CONFER JURISDICTION OVER EUROPEAN TOUR IN THE STATE OF FLORIDA**

Since November 2020, European Tour and PGA TOUR have developed a Strategic Alliance.[4] (*Id.* ¶ 11). The alliance enhances and connects the ecosystem of professional golf through a number of areas, including global scheduling, prize funds and playing opportunities for the Tours' respective memberships. (*Id.*). One aspect of the alliance is the "co-sanctioning" of the PGA TOUR's Barracuda and Barbasol Championships held in California and Kentucky, respectively. (*Id.* ¶ 12). "Co-sanctioning" these tournaments means that 50 European Tour players are allowed to play in each tournament. (*Id.*).

---

[4] All information provided herein regarding the Strategic Alliance agreements can be found in public sources. *See, e.g.*, European Tour, *European Tour and PGA Tour Announce Landmark Strategic Alliance* (Nov. 27, 2020), https://www.europeantour.com/dpworld-tour/news/articles/detail/european-tour-pga-tour-announce-strategic-alliance/; European Tour, *PGA Tour and European Tour Announce Details of Historic Strategic Alliance* (Aug. 3, 2021), https://www.europeantour.com/dpworld-tour/news/articles/detail/pga-tour-and-european-tour-announce-details-of-historic-strategic-alliance/; European Tour, *DP World Tour, PGA Tour Expand and Strengthen Alliance* (June 28, 2022), https://www.europeantour.com/dpworld-tour/news/articles/detail/dp-world-tour-pga-tour-expand-and-strengthen-alliance/.

Representatives of European Tour and PGA TOUR met at the PGA TOUR headquarters in Ponte Vedra Beach, Florida, as well as in New York, in London, and at European Tour's head office in Surrey, England, in the 2020-2022 time frame to negotiate the alliance. (*Id.* ¶ 13). However, European Tour's business operations have not extended into the U.S. or into Florida specifically. (*Id.*).

In addition, as part of the alliance, PGA TOUR's Commissioner, Jay Monahan, became a non-executive member of European Tour's Board in 2021. (*Id.* ¶ 14).

## IV.   PGA TOUR COMMISSIONER JAY MONAHAN HAS NO AUTHORITY TO CONDUCT BUSINESS ON BEHALF OF EUROPEAN TOUR

As of January 2021, Jay Monahan has been a non-executive director ("NED") of the Board of Directors of European Tour, which is comprised of 15 directors. (*Id.* ¶ 15). His role as a NED is not a full-time role, and he is not remunerated for his membership on the Board. (*Id.* ¶ 16). Mr. Monahan has no authority to unilaterally transact business on behalf of European Tour in Florida or anywhere else. (*Id.* ¶ 17). Rather, in accordance with the Articles of Association of European Tour, the business of European Tour is managed by its board of directors (the "Board") as a collective. (*Id.*). He has attended, in whole or in part, six board of directors' meetings, both virtually and in person in England, since joining the board in 2021. (*Id.* ¶ 18).

Mr. Monahan is not an employee of European Tour, and he does not hold any executive position. (*Id.* ¶ 19). He has no involvement in the day-to-day running of European Tour, which is principally delegated by the Board to the Chief Executive

Officer of European Tour and the other executives. (*Id.*).

## MEMORANDUM OF LAW

### I.    LEGAL STANDARD

The proper venue for a motion to quash a Rule 45 subpoena is "the court for the district where compliance is required." *See* Fed. R. Civ. P. 45(d)(3)(A). Rule 45 dictates when the quashing of a subpoena is mandatory: a court "<u>must</u> quash or modify a subpoena that . . . (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c)." *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) (emphasis added). To meet the "geographical limits" in Rule 45(c), a subpoena for testimony limits the taking of a witness's deposition to "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Similarly, a subpoena seeking the production of documents must command compliance "at a place within 100 miles of where the person [subpoenaed] resides, is employed, or regularly transacts business in person." *See* Fed. R. Civ. P. 45(c)(2)(A); Fed. R. Civ. P. 34(c). Here, the Subpoena fails Rule 45's "geographical limits" requirements because the European Tour does not "reside," is not "employed," and does not "regularly transact[] business in person" within 100 miles of the place of compliance in Jacksonville. *See Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, No. 5:19-CV-381-TKW/MJF, 2020 WL 6127079, at *1 (N.D. Fla. May 1, 2020).

Moreover, in order to compel its compliance with a Rule 45 subpoena, a court must possess personal jurisdiction over a non-party. *Heissenberg*, 2021 WL 2621100, at *2. *see also Posner*, 178 F.3d at 1214 n.6. Personal jurisdiction is a two-part analysis:

(i) whether the forum state's long-arm statute confers personal jurisdiction; and (ii) whether Due Process requirements are satisfied. *Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC*, 18-21445-CIV, 2019 WL 1112553, at *2 (S.D. Fla. Jan. 9, 2019). LIV cannot meet either part of this analysis given the European Tour's lack of contacts within Florida.

## II.    THE SUBPOENA VIOLATES RULE 45 AND APPLICABLE LAW

### A.    The Subpoena Is Invalid On Its Face for Failure to Satisfy Rule 45(c)(1)'s Geographical Limits For Depositions.

#### 1.    The Subpoena Requires Compliance More Than 100 Miles From European Tour's Headquarters, In Violation of Rule 45(c)(1).

Rule 45 limits the taking of a witness's deposition to "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A corporation "resides" at the location of its headquarters. *See Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. Feb. 5, 2018) (the place of compliance for a Rule 45 subpoena served on a corporation is the location of the corporation's headquarters); *cf. MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("[A] corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business."). LIV's Subpoena violates this geographical limitation because it requires the attendance of a corporate representative at a deposition occurring in Jacksonville despite the fact that European Tour's headquarters is over 4,000 miles away in England. *See* Ex. A.

9

Courts have held that a proper place of compliance for a Rule 45 subpoena directed to a corporate entity is the district in which the entity's headquarters are located. *See, e.g., Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 1722481, at *3 (S.D. Fla. Apr. 15, 2015) (the district of compliance for Rule 45 subpoena is where nonparty corporation was headquartered); *Ortiz v. Harrell*, No. 21-14219-CIV, 2022 WL 457856, at *4 (S.D. Fla. Feb. 14, 2022) ("For non-party corporations, courts find that 'the place of compliance' is where a corporation is headquartered."); *Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, No. 20-21964-CIV, 2021 WL 9440378, at *1 (S.D. Fla. June 10, 2021) ("Thus, the district of compliance for a nonparty corporation is typically where the corporation is headquartered."); *Europlay*, 323 F.R.D. at 629-30 (holding that the court had no authority to compel non-party Google to produce business records in the district where it had a satellite office, but not its headquarters). The Subpoena is improper and unenforceable.

> ### 2. The Subpoena Requires Compliance More Than 100 Miles From Where European Tour "Regularly Transacts Business in Person," In Violation of Rule 45(c)(1).

As described at length above, European Tour does not transact business within 100 miles of the place of compliance, much less "regularly" or "in person." European Tour does not host or operate any tournaments in Florida, has no offices in Florida, has no business licenses or registrations in Florida, and has generated no income from business activities in Florida. (Decl. ¶ 9). In addition, during the past five years, European Tour executives have only made approximately 11 visits to Ponte Vedra

Beach or Daytona Beach (locations within 100 miles of the place of compliance) on European Tour business. (*Id.* ¶ 10).

In analyzing whether an entity "regularly transacts business in person" in a jurisdiction, courts have looked to the number of visits a subpoenaed entity's representative has made to the jurisdiction and the nature of those visits. Courts have found that corporate representative visits to a place of compliance that were of similar or greater frequency to European Tour's visits were not sufficient under Rule 45(c). *See, e.g.*, *DRFP, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-cv-793, 2015 WL 13034991, at *2 (S.D. Ohio June 30, 2015) (three trips to the place of compliance within one year for a matter unrelated to the deponent's primary business insufficient); *Bostian v. Suhor Indus., Inc.*, No. 07-CV-151-GKF-FHM, 2007 WL 3005177, at *1 (N.D. Okla. Oct. 12, 2007) ("[T]wice yearly business visits to Oklahoma are not frequent enough to be considered regularly transacting business."); *Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996), *dismissed*, 113 F.3d 1256 (Fed. Cir. 1997) (corporate representative's ten visits to the district in seven years not sufficiently regular). The same result is mandated here, as European Tour has only transacted business in the place of compliance, on average, approximately twice per year over the past five years.

Moreover, PGA TOUR Commissioner Jay Monahan's physical location in Ponte Vedra Beach is legally insufficient. First, in order to fall within the geographic limit of Rule 45(c), *European Tour* (not Jay Monahan) must physically transact business "in person" within 100 miles of Jacksonville. *See Kohne*, 166 F.R.D. at 464

11

(The phrase "in person" "means just what it says."). The mere presence of one of its directors near Jacksonville does not somehow transform European Tour's overseas business operations as physically transacted within 100 miles of the place of compliance.

Furthermore, a single director's remote attendance from Florida[5] at a board meeting physically held in the U.K., six or fewer times over a 22-month period, is insufficient to support a finding that European Tour "regularly transacts business in person" within 100 miles of Jacksonville. *See Jones v. Jasper Wyman & Son*, No. 1:20-CV-00383-JAW, 2022 WL 16820442, at *4 (D. Me. Nov. 8, 2022) (finding that "attending two sets of quarterly board meetings in Maine, totaling eight meetings per year," does not "equate[] to 'regularly transact[ing] business in person' in Maine."). Similarly, the only approximately 11 visits to Ponte Vedra Beach or Daytona Beach (Decl. ¶ 10), by European Tour executives also does not constitute European Tour "regularly transact[ing] business" within 100 miles of the place of compliance.

Significantly, as explained above, Jay Monahan has no authority to conduct business on behalf of European Tour. (Decl. ¶ 17). He is not an employee of European Tour. (Decl. ¶ 19). He is a non-executive director with no authority to transact business on European Tour's behalf. (Decl. ¶¶ 15, 17). He only acts within his capacity as a non-executive director of European Tour during those few instances in which the

---

[5] European Tour is unaware of the location(s) from which Mr. Monahan joined board meetings remotely, but even assuming he did so within 100 miles from the place of compliance, this does not meet Rule 45(c)'s "regularly transacting business in person" test.

board of directors formally meets and he attends the meeting – either virtually or in person in England. (Decl. ¶ 18).

Furthermore, the alliance between European Tour and PGA TOUR commencing in November 2020 does not satisfy Rule 45(c)(1). Again, the fact that representatives of European Tour and PGA TOUR met in Florida in limited instances in order to negotiate the alliance does not mean that European Tour "regularly transacts business in person" in Florida. *Cf. Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("[W]here a foreign corporation does not engage in general business in the forum, simply negotiating a contract there will not support general in personam jurisdiction."). As described in Background Section III, *supra*, nothing in the alliance extended European Tour's business operations into Florida. (Decl. ¶ 13).

The Subpoena is invalid as violative of Rule 45(c) and should be quashed.

**B.     The Subpoena's Alternative Requirement of Deposition by Video Conference Cannot Remedy its Facial Invalidity.**

"A district court can only subpoena non-party witnesses inside its district or within 100 miles of the district." *White v. Alcon Film Fund, LLC*, No. 1:13-cv-1163-TCB, 2013 WL 12063923, at *7 (N.D. Ga. July 9, 2013). While the Eleventh Circuit has not addressed the precise question of whether a videoconference deposition somehow satisfies Rule 45(c), the Southern District of New York quashed a subpoena requiring a remote deposition by relying on the analogous Eleventh Circuit case of *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145,

1160 (11th Cir. 2019) (per curiam). In *Broumand v. Joseph*, 522 F. Supp. 3d 8, *23-25 (S.D.N.Y. 2021), in the arbitration context where Rule 45 still governed non-party subpoenas, the court held that it would not compel the non-party witness to attend a hearing remotely by videoconference where the party resided outside the 100-mile geographic limit. The court rejected the proponent's argument that Rule 45(c) was not implicated because the witness would not have to travel to attend the hearing. In so holding, the court held that such an approach is

> inconsistent with the text of Rule 45(c), which speaks, not of how far a person would have to travel, but simply the location of the proceeding at which a person would be required to attend. Moreover, any other reading would render Rule 45(c)'s geographical limitations a nullity . . . .

*Id.*

The *Broumand* court expressly relied on the reasoning of the Eleventh Circuit Court of Appeals in *Managed Care Advisory Group*. In that case, the Eleventh Circuit reversed the enforcement of arbitral summonses with similar geographical limitations to a Rule 45 subpoena in holding that the plaintiffs could not force a non-party to testify at a hearing via videoconference from outside of the geographical limitations. *Managed Care Advisory Group*, 939 F.3d at 1151, 1160. There, the arbitral subpoenas commanded non-parties to attend a hearing before the arbitrator in Miami from their respective locations across the country by videoconference. *Id.* The non-parties were also directed to bring certain documents to the videoconference. *Id.* The Eleventh Circuit held that the district court lacked authority to compel remote testimony where the text of the statute contemplated physical attendance and physical production of

documents at the hearing. *Id.* at 1160–61.

The Court here should hold likewise. To enforce a subpoena compelling the testimony of a corporate representative over 4,000 miles away from the district of compliance and location of the deposition would render subsection (c) of Rule 45 entirely meaningless. Regardless of the arguable convenience of remote depositions, there is no exception contained in Rule 45(c) permitting compulsory testimony from anywhere in the world. Any "policy argument [supporting remote testimony] does not supersede the text of the statute." *Managed Care Advisory Group*, 939 F.3d at 1161. LIV's subpoena "must" be quashed because it fails to meet the geographical requirements of Rule 45. *See* Fed. R. Civ. P. 45(d)(3)(ii); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.* ("*In re 3M II*"), No. 3:19-MD-2885, 2022 WL 504451, at *2 (N.D. Fla. Feb. 18, 2022) ("[A] party may use a Rule 45 subpoena to compel remote testimony by a witness from anywhere so long as the place of compliance (where the testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c)."); *Ping-Kuo Lin v. Horan Capital Mgmt. LLC*, No. 14-cv-5202, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014) (videoconference did not cure defective Rule 45 subpoena because the respondent was more than 100 miles away from place of compliance).

C.  **The Subpoena Also Fails To Satisfy Rule 45(c)(2)'s Geographical Limits For Production of Documents.**

The Subpoena also violates Rule 45's geographical limitations on the production of documents, which requires that the place of production must be "a place

within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). LIV's Subpoena violates this geographical limitation because it requires the production of documents to be made thousands of miles away from European Tour headquarters in the U.K. and where it "regularly transacts business in person."

Courts in the Middle District of Florida have quashed subpoenas requiring the production of documents at locations more than 100 miles from the place of compliance. *See Wane v. Diallo*, No. 8:20-CV-171-T-02CPT, 2020 WL 13413993, at *3 (M.D. Fla. Dec. 14, 2020) (the requested production in Houston more than 100 miles from Tampa "alone renders [the] subpoena infirm"); *Merlin Petrol. Co. v. Sarabia*, 2016 WL 9244728, at *1 (M.D. Fla. Aug. 4, 2016) (quashing subpoena requiring a Tampa-based company to produce documents in Jacksonville).

The same defects discussed above are present here. European Tour is headquartered in England and does not regularly transact or otherwise conduct business in Florida. Neither Jay Monahan's status as a non-executive director located in Florida, nor the alliance with PGA TOUR in Florida, provides a basis to find that European Tour "regularly transacts business in person" in Florida. To enforce a Rule 45 subpoena compelling the production of documents from halfway around the world would render the geographical limitation of Rule 45(c) meaningless. LIV's Subpoena must be quashed.

**D.    The Court Cannot Compel Compliance With the Subpoena Because It Lacks Personal Jurisdiction Over U.K.-Based European Tour.**

In addition to the Subpoena's myriad facial defects, the Subpoena must be quashed because this Court lacks personal jurisdiction over European Tour. In order to compel its compliance with a Rule 45 subpoena, a court must possess personal jurisdiction over a non-party. *Heissenberg v. Doe*, No. 21-80716-CIV, 2021 WL 2621100, at *2 (S.D. Fla. June 24, 2021); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

Federal courts undertake a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274–75 (11th Cir. 2009); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

Regarding the first step of the inquiry, Florida's long-arm statute provides for two types of personal jurisdiction—general and specific. *Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC*, 18-21445-CIV, 2019 WL 1112553, at *2 (S.D. Fla. Jan. 9, 2019). With respect to general jurisdiction under Florida law, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "A court with general jurisdiction over a foreign corporation is free to hear and all claims

against them and requires the corporation to maintain affiliations with the forum state that are so continuous and systematic as to render them 'essentially at home.'" *Euclid Fish Co. v. Cape Fla. Seafood*, No. 21-MC-22310, 2021 WL 4976530, at *7 (S.D. Fla. Aug. 20, 2021), *report and recommendation adopted*, No. 21-22310-MC, 2021 WL 4145207 (S.D. Fla. Sept. 13, 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Furthermore, "[i]n the absence of exceptional circumstances, general personal jurisdiction over a corporation is limited to the state in which it is incorporated and where its principal place of business sits." *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 & n.19 (2014)). European Tour is headquartered and incorporated abroad and does not engage in "substantial" activity within Florida. As it cannot be shown that European Tour is "essentially at home" in Florida, there can be no general personal jurisdiction over European Tour in the Middle District of Florida. *See id.*

Specific jurisdiction is equally inapplicable. Florida's long-arm statute provides for specific jurisdiction over a non-resident defendant as follows:

> Any person, whether or not a citizen or resident of this state, who . . . does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (a) *Operating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida].*
> . . . .

Fla. Stat. § 48.193(1) (emphasis added).

Under Florida's long-arm statute section 48.193(1)(a), "[i]In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, [t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a *general course of business activity in the State for pecuniary benefit.*" *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321–22 (S.D. Fla. 2009) (internal quotation omitted) (emphasis added). The relevant factors for this part of the analysis "include the presence and operation of an *office in Florida*, the possession and maintenance of a *license to do business in Florida*, the *number of Florida clients served*, and the *percentage of overall revenue gleaned from Florida clients*." *Horizon Aggressive Growth, LP. v. Rothstein–Kass, PA*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted) (emphasis added).

None of these factors supports a finding of specific personal jurisdiction. European Tour does not conduct its business in or from Florida. European Tour has no office in Florida. It has no business license in Florida. It has no clients in Florida. It has not generated any revenue from clients in Florida. (Decl. ¶ 9).

Any joint venture theory of personal jurisdiction would similarly fail. Even if the alliance constituted a "joint venture" under Florida law, which it does not, LIV cannot show the minimum contacts necessary to establish personal jurisdiction over European Tour. "[M]embers of a joint venture . . . are subject to a forum state's exercise of personal jurisdiction over them if the joint venture contemplates and actually involves performance in that state." *Sabo v. Carnival Corp.*, 762 F.3d 1330, 1337 (11th Cir. 2014)). Here, the alliance contemplates no performance in Florida,

does not involve actual performance in Florida, and does not confer personal jurisdiction over European Tour in Florida.

In sum, European Tour is not "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency" in Florida. *See* Fla. Stat. § 48.193(1)(a). The personal jurisdiction inquiry should stop here, as the first step of the personal jurisdiction test cannot be met.

If the Court is inclined to consider the second step of the personal jurisdiction analysis, whether the exercise of personal jurisdiction comports with due process, it must engage in another two-step inquiry. First, the Court must decide whether the foreign party has "minimum contacts" with Florida, and second, it must decide whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990).

"To constitute constitutionally minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (internal citations omitted).

These "minimum-contact" test factors weigh against the exercise of personal

jurisdiction. European Tour has not "purposefully availed itself of the privilege of conducting activities within" Florida. *See id.* Again, given the lack of contacts European Tour has with Florida, it has not availed itself of the privileges and protections of Florida law and could not reasonably anticipate being haled into court in Florida. Furthermore, European Tour has located no authority suggesting that the existence of one non-executive director located in Florida, or an alliance with a U.S. company doing business in Florida, would confer personal jurisdiction over European Tour in Florida. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010). (It is "well-established . . . that neither merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts."). The Subpoena is unenforceable for lack of personal jurisdiction.

## III. PLAINTIFF'S PENDING HAGUE CONVENTION REQUEST IS THE APPROPRIATE VEHICLE FOR DISCOVERY FROM EUROPEAN TOUR.

On November 10, 2022, Respondent and the other Plaintiffs filed a Motion for Issuance of Letters Rogatory Pursuant to the Hague Convention in the underlying lawsuit. *See* LIV Action, ECF No. 154. By their motion, Plaintiffs seek a February 2023 deposition of European Tour's CEO Keith Pelley on 31 listed topics,[6] a deposition in February 2023 of European Tour's corporate representative on 29 listed

---

[6] As the Hague Convention is the only permissible means for obtaining a deposition from Mr. Pelley, who has not been personally served with a subpoena, LIV inevitably will need to comply with Hague Convention protocols.

topics, and European Tour's production of 45 categories of documents. The discovery that Plaintiffs seek from these foreign non-parties is extensive, and the Hague Convention—*not a facially invalid Rule 45 subpoena*—is the appropriate avenue for obtaining any such discovery.

The Hague Convention provides a standard way for litigants to obtain discovery from international entities through the transmission and execution of Letters of Request. *See* 23 U.S.T. 2555, Art. 1. The decision to require a litigant to pursue discovery through the Hague Convention is within the court's discretion. *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019). "[I]n determining whether to employ Hague Convention means or allow other procedures, a court must look to such factors as considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficacy of alternative formats for discovery." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, ("*In re 3M I*") No. 3:19-MD-2885, 2020 WL 5578428, at *4 (N.D. Fla. Feb. 18, 2020).

The U.S. Supreme Court has instructed federal courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 546 (1987). The Supreme Court articulated five factors that a court can weigh when determining whether to quash a subpoena in favor of the Hague Convention:

(1) the importance to the . . . litigation of the documents or other information requested;
(2) the degree of specificity of the request;
(3) whether the information originated in the United States;
(4) the availability of alternative means of securing the information; and
(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28.

The *Aerospatiale* factors weigh in favor of requiring LIV to pursue discovery through the Hague Convention. First, the documents that LIV seeks are of secondary importance to the litigation. European Tour is a non-party whose business virtually all takes place in Europe; PGA TOUR is the defendant in that action, not European Tour. Any documents for which European Tour could be in sole possession would have limited probative value compared to those created and held by PGA TOUR.

Even if the documents sought are relevant, the remaining factors favor employing the Hague Convention. *See In re 3M I*, 2020 WL 5578428 at *4 (quashing a subpoena even when the documents sought by the plaintiff were relevant to the underlying litigation because the remaining *Aerospatiale* factors favored requiring the plaintiff to seek them through the Hague Convention).

Regarding the second factor, LIV has sought to depose a corporate representative of European Tour, whose employees, including executives, are all outside of the U.S., mainly in Europe and some in the Middle East and Asia. (Decl. ¶ 4). LIV is also demanding that European Tour produce documents responsive to 37 categories of documents. *See* Ex. A. The vast majority of these categories are

overbroad in scope.[7]

Third, none of the requested information or documents that European Tour uniquely possesses originated in or are maintained in the United States, but rather in the United Kingdom. (*Id.* ¶ 20).

Fourth, LIV has alternative means of securing the information it seeks. For example, any communications that European Tour has had with PGA TOUR can be obtained through discovery from PGA TOUR, the Defendant in the underlying action. *In re 3M I*, 2020 WL 5578428, at *8 (requiring discovery through the Hague Convention in part because "[t]here is [] no suggestion that the requested documents originated in the United States or they are not otherwise obtainable from domestic sources over which the Court would have jurisdiction (such as Defendants).");  *Euclid Fish Co.*, 2021 WL 4976530 at *10 ("Plaintiffs seek broad swaths of information that did not originate in the United States and can be achieved by other means. These facts . . . justify quashing the Subpoena."). LIV can likewise seek this information through the Hague Convention, a process that it has already begun.

Finally, the interests of the United States are not implicated by noncompliance with LIV's request. The subpoenaed entity's "status as [a] non-part[y] does attenuate the United States interest in enforcing discovery obligations." *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 157 (S.D.N.Y. 2011). The United States has no interest

---

[7] By email dated November 13, 2022, LIV agreed that European Tour's filing of the instant Motion in lieu of objections does not waive any of European Tour's objections to the Subpoena, including for privilege.

in enforcing its own laws against a foreign company that does not operate its business in the United States.

Importantly, U.S. District Courts in Florida have emphasized that the Hague Convention is the only means for obtaining discovery from a non-party when a court lacks personal jurisdiction over the non-party. *In re 3M I*, 2020 WL 5578428, at *7 n.6 ("There is no question that a party attempting to obtain discovery from a foreign nonparty must resort to the Hague Evidence Convention's discovery procedures (where available) if," as in this case, "the Court does not have personal jurisdiction over the nonparty."); *Gubarev v. BuzzFeed, Inc.*, No. 17-cv-60426, 2017 WL 5634935, at *1 (S.D. Fla. Aug. 15, 2017) ("The court here has no personal jurisdiction over [the foreign, nonparty individual from whom discovery was sought], and thus the Hague [Evidence] Convention is the only means by which to facilitate discovery.").

LIV's Subpoena should be quashed, and LIV should be required to pursue its discovery requests through the mechanism established by the Hague Convention, a process that LIV has already commenced in the underlying litigation.

## CONCLUSION

For the foregoing reasons, non-party European Tour respectfully requests that the Court GRANT its Motion to Quash LIV's Rule 45 Subpoena.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

Counsel for Non-Party PGA European Tour hereby certify that they have conferred with counsel for LIV Golf, Inc. via Zoom Videoconference and Electronic Mail, prior to the filing of this Motion and that LIV Golf, Inc.'s counsel opposes the relief requested by this Motion.

Date: November 16, 2022       **McGuireWoods LLP**

By: *  /s/ R. Eric Bilik *
R. Eric Bilik (FL Bar No. 0987840)
ebilik@mcguirewoods.com
Kimberly T. Mydock (FL Bar No. 0100571)
kmydock@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

and

William P. Keane (SBN 124756)
*(Motion for Special Admission Pending)*
wkeane@fbm.com
Janice W. Reicher (SBN 287591)
*(Motion for Special Admission Pending)*
jreicher@fbm.com
Daniel A. Contreras (SBN 329632)
*(Motion for Special Admission Pending)*
dcontreras@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th FL
San Francisco, California 94104
Tel: (415) 954-4400

*Attorneys for Movant PGA European Tour*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on November 16, 2022 prior to 12:00 p.m. Pacific Time/3:00 p.m. Eastern Time, I conventionally filed the foregoing by hand-delivering a copy to the Clerk of Court for the United States District Court for the Middle District of Florida, Jacksonville Division, and served a copy by Electronic Mail on:

Rachel S. Brass, Esq.
rbrass@gibsondunn.com
Lauren D. Dansey, Esq.
ldansey@gibsondunn.com
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Joshua Lipton, Esq.
jlipton@gibsondunn.com
Kristen C. Limarzi, Esq.
klimarzi@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500

Robert C. Walters, Esq.
rwalters@gibsondunn.com
Scott K. Hvidt, Esq.
shvidt@gibsondunn.com
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

John B. Quinn, Esq.
johnquinn@quinnemanuel.com
Dominic Surprenant, Esq.
dominicsurprenant@quinnemmanuel.com
Kevin Teruya, Esq.
kevinteruya@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

Robert P. Feldman, Esq.
bobfeldman@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Respondent LIV Golf, Inc. and for*
*Matt Jones, Bryson DeChambeau, and Peter Uihlein*

John W. Keker, Esq.
jwk@kvn.com
Brook Dooley, Esq.
bdooley@keker.com
Nicholas S. Goldberg, Esq.
ngoldberg@keker.com
Thomas E. Gorman, Esq.
tgorman@keker.com
Sophie A. Hood, Esq.
shood@keker.com
Leo L. Lam, Esq.
llam@keker.com
Robert A. Lauridsen, Esq.
alauridsen@keker.com
Eric H. MacMichael, Esq.
emacmichael@keker.com
Nicholas D. Marais, Esq.
nmarais@keker.com
Elliot R. Peters, Esq.
epeters@keker.com
David J. Silbert, Esq.
dsilbert@keker.com
Kathleen Corey, Esq.
KCorey@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

Anthony J. Dreyer, Esq.
anthony.dreyer@skadden.com
Karen H. Lent, Esq.
karen.lent@skadden.com
Matthew M. Martino, Esq.
matthew.martino@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001

Patrick J. Fitzgerald, Esq.
patrick.fitzgerald@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive, Suite 2700
Chicago, IL 60606

*Attorneys for PGA Tour, Inc.*

/s/ *R. Eric Bilik*
Attorney