IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| **PGA EUROPEAN TOUR** | § <br> § <br> § |
| Movant, | § <br> § |
| v. | § <br> §   Case No. **3:22-mc-00016-TJC-LLL** |
| **LIV GOLF, INC.** | § <br> § <br> § |
| Respondent. | § <br> § |

# LIV GOLF'S SUR-REPLY IN OPPOSITION TO PGA EUROPEAN TOUR'S MOTION TO QUASH RULE 45 SUBPOENA

## INTRODUCTION

Just *one day* after it filed its Reply, the ET's CEO was once again in this District, attending yet another meeting to further the conspiratorial agreement at issue in the underlying litigation. Opp. (Dkt. 11) at 1 & Brass Decl. Ex. 31. The ET's motion is based on empty characterizations, such as the demonstrably false assertion that its activities in Florida are "limited and sporadic." Reply at 3. Such characterizations aside, the *facts* of the ET's contacts are undisputed, and those facts are more than enough for this Court to require the ET to comply with the Subpoena and deny its Motion:

- The conspiratorial agreement with the PGAT at issue in the underlying litigation was negotiated in person in this District, at the PGAT's headquarters in Ponte Vedra. Reply at 2 n.3.

- As part of that conspiratorial agreement, the ET received tens of millions of dollars in funding, and in exchange agreed not to partner with potential competitors of the PGAT. Opp. at 4.[1]

- Since entering into that conspiratorial agreement, the ET's CEO has *repeatedly* returned to conduct business in this District. Opp. at 5–7.

- While physically present in this District, the ET's CEO has attended an ET board meeting virtually, alongside Mr. Monahan. Opp. at 5–6.

- Several other senior ET executives, including its Deputy CEO, have repeatedly traveled to this District, to Florida, and around the United States to conduct ET business in-person. Opp. at 6.

- As part of the conspiratorial agreement, Mr. Monahan, a resident of this District, joined the ET's Board and has repeatedly conducted business on behalf of the ET from here. Opp. at 12 (citing multiple emails regarding Mr. Monahan's actions to further ET interests from Ponte Vedra).

---

[1] The ET feigns ignorance about the money it received, Reply at 9, but those moneys are the subject of public reporting, *e.g.* Brass Decl. Ex. 5, and LIV cites documents *in the ET's possession* that quantify how much and why the ET was paid, *e.g.* Brass Decl. Ex. 6.

1

- Since entering into the conspiratorial agreement with the PGAT in 2020, the ET has had electronic communications with the Florida-based PGAT on a near-daily basis.  Opp. at 9 & Brass Decl. ¶ 2.

- The Ryder Cup—a biannual event alternating between the U.S. and Europe—is one of the ET's primary sources of revenue.  Opp. at 2, 8.

- When the ET conspired with the PGA of America to bar LIV players from the Ryder Cup, the PGA of America was based in Florida.  Opp. at 7–8.[2]

- The ET's 2022 schedule for the DP World Tour—which creates opportunities for its players and is unquestionably part of its business—had six events in the United States, more than any other country in the world.  Reply at 8–9.

The ET requested leave to file a Reply, but in that Reply it has not denied any of these facts, which compel rejection of the ET's Motion to Quash.  And, given that document discovery closes in the underlying litigation on March 30,[3] the Court should order the ET to comply with the Subpoena on an expedited basis.

## ARGUMENT

### I. The Subpoena satisfies Rule 45(c)'s 100-mile travel limitation.

Rule 45(c)'s 100-mile travel limitation is readily satisfied because the ET regularly transacts business in person within 100 miles of Jacksonville, and because the option for virtual compliance means the ET need not travel at all.  Opp. at 10–14.  The ET bears the burden to establish otherwise.  *Wesolek v. Wesolek*, 2021 WL 3572221, at *2 (M.D. Fla. Jan. 20, 2021).  It has failed to meet that burden.

---

[2] While the ET attempts to diminish its level of control over the Ryder Cup by saying its co-administration of the Ryder Cup is done through an LLP of which it is merely "a member," Reply at 9, it is in fact *the majority* member.  See https://www.rydercup.com/about-us (accessed Dec. 12, 2022).

[3] On the date this Sur-Reply was filed, the court in the underlying litigation held a case management conference.  *Mickelson v. PGA Tour, Inc.*, 5:22-cv-04486-BLF (N.D. Cal.), ECF No. 182.  The court ordered new discovery deadlines: document discovery (March 30) and depositions (May 26).

### A. The ET regularly transacts business in person in this District.

LIV's Opposition detailed the many and different ways in which the ET conducts business in this District—the majority of which relate to implementing the collusive and anticompetitive agreement with the PGAT that the ET negotiated less than 30 miles from this Court. Opp. at 3–9. The ET does not deny any of those acts, rather, it argues that Rule 45(c) is a "bright line rule." True enough: Rule 45 requires compliance within 100 miles of a place where the ET "regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (2)(A). The question of whether the ET regularly transacts business, by contrast, is established by looking at the course of conduct as a whole. *See Sullivan v. PJ United, Inc.*, 2017 WL 11675693, at *4 (N.D. Ala. Dec. 15, 2017). There is no "magic number" for when Rule 45 is satisfied, and when it is not.

The facts here pass that wholistic test. The ET entered into an anticompetitive agreement with the PGA Tour *in this District*. It has returned repeatedly to this District to act in furtherance of this conspiracy—including another meeting last weekend. In addition, the ET added Jay Monahan—PGAT Commissioner and resident of this District—to its board. Mr. Monahan has repeatedly attended the ET's board meetings from this District—joined at least once in-person by ET's CEO Keith Pelley. And because the "alliance" between the ET and PGAT *is* their illegal agreement, Brass Decl. Ex. 32 (Am. Compl.) ¶¶ 341–53, the thousands upon thousands of emails and other communications to and from the ET in this district are the embodiment of the ET "doing business" whether they drive independent revenue or not. *See Sullivan,* 2017 WL 11675693, at *4 ("frequent business *interactions* … constitute[] [the] regular

3

transaction of business") (emphasis added).

The ET encourages the Court to look past this pattern of organized conduct by citing *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000), where the court found mere negotiation of a contract did not establish general personal jurisdiction. But that case is inapt. As a legal matter, "[j]urisdictional analysis is inappropriate for analyzing Rule 45 because it responds to an entirely different set of concerns." *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996). Moreover, the ET's business here extends well beyond a single contract. The ET easily falls within the range of fact patterns sufficient to establish that it regularly transacts business in person within 100 miles of the place of compliance. Opp. at 12.

Contrary to the ET's suggestions, LIV's position is not a rewriting of Rule 45. The Subpoena falls well within its scope, and the ET should be required to comply.

### B.   Rule 45(c) is satisfied by the option of virtual compliance.

LIV further demonstrated in its Opposition that the Subpoena also satisfies Rule 45(c) because it gives the ET an option to comply virtually from where it resides (or wherever it wants), which multiple courts have found to be permissible. Opp. at 13. The ET's contrary arguments misapprehend Rule 45 and the caselaw interpreting it.

The key consideration under Rule 45(c) is how far the witness is located from the place of compliance—*i.e.*, where the testimony will be provided. Fed. R. Civ. P. 45(c)(1) ("Place of Compliance" is where witness will "attend" the deposition). Here, if the ET chooses to comply virtually, the place of compliance (presumably, its office), is well within the constraints of Rule 45(c). *See Int'l Seaway Trading Corp. v. Target*

4

*Corp.*, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) (compelling virtual compliance from St. Louis "consistent with the plain language of Rule 45(c)," as the witness "can comply with the deposition from his home or anywhere else he chooses").[4]

The same is true for document production. *Trahan v. Sandoz Inc.*, 2014 WL 12628614, at *3 (M.D. Fla. July 23, 2014) (rejecting Rule 45(c) challenge because "Ms. Adler need not appear in person at the place of production. Therefore, the Court will not quash the subpoena on this basis."); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 6128233, at *2 (N.D. Fla. Dec. 28, 2021) ("because Berger does not need to appear in person in Pensacola to produce the documents the subpoena does not violate the 100-mile limitation in Rule 45(c)").[5]

The ET's reliance on *In re 3M Combat Arms Earplug Products Liability Litigation*, 2022 WL 504451, at *2 (N.D. Fla. Feb. 18, 2022), is misplaced. The ET appears to argue the subpoena recipient in that case resided within 100 miles of the court in Pensacola. Reply at 3-4. But that is wrong; the recipient resided in Indiana. *See* Elliott Berger's Opp. to Pl. Mot. to Authorize Remote Test., *In re 3M Combat Arms*, 3:19-MD-

---

[4] The ET is correct that both *International Seaway* and *Managed Care* analyze an arbitrator's powers, Reply at 5 n.6, but that does not change the fact that one is fully on point here while the other inapposite. *Managed Care*, on which the ET relies, analyzed an arbitrator's power to compel witnesses under the different operative text of 9 U.S.C. § 7. Nowhere did *Managed Care* reference Rule 45(c), let alone analyze it. *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145 (11th Cir. 2019). Conversely, *International Seaway* analyzed an arbitrator's powers under Rule 45(c), holding that Rule 45(c) can be satisfied by virtual compliance, 2021 WL 672990, at *5–6, and is squarely relevant here.

[5] *See also, e.g.*, *Cartessa Aesthetics LLC v. Aesthetics Biomed. Inc.,* 2020 WL 5846603, at *1-2 (D. Ariz. Oct. 1, 2020) (Rule 45(c) satisfied where witness "may comply by emailing the requested materials") (compiling cases); *Elsom v. Glob. Life & Accident Ins. Co.*, 2018 WL 4092020, at *2-3 (D. Or. Jan. 16, 2018) (Rule 45(c) satisfied where witness can "tender the documents electronically") (compiling cases); *Dippel v. S.C. Farm Bureau*, 2018 WL 5763690, at *1 (D.S.C. Nov. 2, 2018) (Rule 45(c) challenge "without merit" where no requirement to personally "appear at the production location") (compiling cases).

5

2885-MCR (N.D. Fla.), ECF No. 2757 at 8. The court rejected the argument that the witness was outside its subpoena power and compelled virtual testimony from Indiana (reading Rules 43 and 45 together). 2022 WL 504451, at *5; *see also* Opp. at 13 (citing similar holdings). This is consistent with the Advisory Committee's Notes, which explain Rule 45(c) prevents witnesses from being compelled "to *travel* more than 100 miles." Fed. R. Civ. P. 45(c) Advisory Comm. Notes to 2013 Amendment (emphasis added). Virtual compliance, of course, provides an effective means of eliminating travel burden. *See U.S. v. $110,000 in U.S. Currency*, 2021 WL 2376019, at *3 (N.D. Ill. June 10, 2021) (rejecting argument that compelling virtual compliance causes Rule 45(c) to lose its meaning); *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, 2014 WL 3573400, at *4 (S.D. Cal. July 18, 2014) ("The 100 mile limit imposed by FRCP 45 applies to *travel* by a subpoenaed person.") (emphasis added; brackets and citation omitted).

The ET suggests that reading Rule 45 to permit a court to compel a witness's virtual compliance from beyond a range of 100 miles would "offend[] the letter and spirit of Rule 45" and permit "any person anywhere" to be compelled to testify virtually. Reply at 4. But personal jurisdiction limits that kind of abuse, preventing a court from compelling subpoena compliance with abandon. Where, as here, the Court has personal jurisdiction over a non-resident witness, there is no violation of Rule 45(c) to compel that witness's virtual compliance with a subpoena that requires no travel at all.

## II. The Court has personal jurisdiction over the ET.

The ET's personal jurisdiction arguments also fail, misconstruing binding precedent and ignoring persuasive authority that the applicable forum is nationwide. But

6

in any event, there is substantial evidence that the ET has had significant and purposeful contact not only with the U.S. as a whole, but with Florida in particular.

### A. The proper forum against which to assess ET's contacts is the U.S.

Eleventh Circuit law is clear: "where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide … service of process," the "applicable forum for minimum contacts purposes is the United States." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997). The ET concedes the Court could hale a defendant before it to face *liability* based on nationwide contacts, Reply at 5–6, but argues it cannot hale a witness to provide *evidence*—a lesser burden on liberty interests—on the same grounds. That notion is as unsupported in the law as it sounds.

Contrary to the ET's Reply, the *Carrillo* decision did not "rel[y]" on Rule 4(k) or any distinction between a defendant and non-party. Reply at 6. *Carrillo* is clear that it looked to Rule 4(k)(2) only as "[a]dditional support" for applying the nationwide-contacts approach. 115 F.3d at 1543. That nationwide contacts approach "is predicated on the well settled principle that service of process constitutes the vehicle by which the court obtains jurisdiction." *Id*. (quotation omitted).[6] And in *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, the court looked to nationwide contacts for personal jurisdiction under a federal statute authorizing nationwide service of process without mentioning Rule 4(k) at all. 119 F.3d 935, 946–47 (11th Cir. 1997).

---

[6] *Carrillo* further explains that the reason for looking to nationwide contacts is that the relevant constitutional provision is the Fifth Amendment's Due Process Clause, not the Fourteenth's. 115 F.3d at 1543. Because the federalism concerns that require looking to the forum state are absent, "a federal court's power to assert personal jurisdiction is geographically expanded." *Id*. (quotation omitted).

7

That rationale—which the ET does not address—applies with equal force in the context of a subpoena. *See S.E.C. v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020) (looking to nationwide contacts for SEC subpoena served pursuant to statute authorizing nationwide service). While LIV is not aware of an Eleventh Circuit decision addressing the question in the specific context of a Rule 45 subpoena, other federal courts have done exactly that, and for good reason. *See* Opp. at 15 & n.5 (citing cases); *see also Mickelson v. PGA Tour, Inc.*, 5:22-cv-04486-BLF (N.D. Cal.), ECF No. 148 at 18–19 (the PGAT relying on some of the same cases to argue in underlying litigation the forum is nationwide to assess personal jurisdiction for a Rule 45 subpoena). The ET does not acknowledge those decisions, much less explain why this Court should depart from them. And the ET's nationwide contacts easily establish personal jurisdiction.

### B.     Personal jurisdiction is also appropriate if Florida is the forum.

Even if the Court looks to the ET's Florida contacts, the ET has substantial and sufficient contacts relating to both the claims giving rise to this litigation and the Subpoena itself. *See* Opp. at 3–9, 16–17. The ET does not deny that for the last three years it has had near-daily electronic communications with the Florida-based PGAT relating to the conspiracy. Opp. at 9 & Brass Decl. ¶ 2. That alone is sufficient. Opp. at 17 n.6. Moreover, because those contacts include conspiring to restrain trade in Florida and the U.S., Florida's long arm-statute provides no shelter. *See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000) (personal jurisdiction over participant in a nationwide price-fixing conspiracy in which some co-conspirators, but not the party at issue, made sales into Florida); *see also Burger King Corp. v. Rudzewicz*,

8

471 U.S. 462, 475 n.18 (1985) ("[E]ven a single act can support jurisdiction.").

The ET appears to concede that conspiring to commit antitrust violations constitutes a "tortious act" within the meaning of the Florida long-arm statute. Reply at 6 (citing *Execu-Tech*, 752 So. 2d at 585). Yet it attempts to brush aside that precedent by noting, in a footnote, that *Execu-Tech* involved a defendant's motion to dismiss for lack of personal jurisdiction. Reply at 6 n.7. That argument has two fatal flaws.

First, the evidentiary standard for motions to dismiss based on lack of personal jurisdiction and for motions to quash a nonparty subpoena for lack of personal jurisdiction are the same. *See Heissenberg v. Doe*, 2021 WL 2621100, at *2 (S.D. Fla. June 24, 2021) (applying the same standard for evaluating a defendant's challenge to personal jurisdiction in the Rule 45 subpoena context). So the ET's status as a nonparty is a distinction without a difference for purposes of applying *Execu-Tech* here.

Second, contrary to the ET's suggestion, the Court need not blindly accept LIV's allegations as true on this point. LIV has presented uncontroverted evidence that the ET's executives traveled to Florida to conspire with the Florida-based PGAT to restrain trade throughout the U.S., including Florida. The ET can ignore or mischaracterize that evidence, but it cannot change those facts, which both bring the ET within the scope of Florida's long arm-statute and refute any suggestion that the exercise of personal jurisdiction here would offend due process. Opp. at 16–17.

### III.   International comity does not mandate using the Hague Convention.

After the ET refused to cooperate, Letters of Request were sought in the underlying litigation. Based on that, the ET wants this Court to require LIV to go through

9

the Hague Convention exclusively to obtain discovery that the Court has the jurisdiction and authority to compel. Reply at 10. But neither international comity nor the interests of justice require exclusive resort to the Hague Convention. Opp. at 18-20; *Calixto v. Watson Bowman Acme Corp.*, 2008 WL 4487679, at *4 (S.D. Fla. Sept. 29, 2008) ("[R]esort to … the Hague Convention [is] optional and [is] not intended to strip American courts of their power."); *see also, e.g.*, *In re Photocromic Lens Antitrust Litig.*, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012) ("Hague Convention could take six months to a year"); *Randall v. Offplan Millionaire AG*, 2019 WL 1003167, at *6 (M.D. Fla. Mar. 1, 2019) ("[D]elay [is] inherent in use of the Hague Convention.").

Ignoring other courts' warnings about the Hague Convention's fraught procedures, the ET asks this Court to abdicate its jurisdiction and rely entirely on the Northern District of California's request for compliance by February 2023. Reply at 10. But the Letters of Request are just that: requests. The executing judicial authority gets to decide what "methods and procedures" to use, and the Convention provides no guarantees for timeliness. *See* Convention on the Taking Of Evidence Abroad in Civil or Commercial Matters, Art. 9 (Mar. 18, 1970), available at https://assets.hcch.net/docs/dfed98c0-6749-42d2-a9be-3d41597734f1.pdf. Moreover, discovery in that proceeding is uncertain at best; the ET can turn around and object to LIV's requests under U.K. law; the PGAT may attempt the same. *See id.* at Art. 11. All of which would unnecessarily drag out a process this Court has the power to resolve.

## CONCLUSION

The Court should deny the ET's motion to quash.

DATED:  December 16, 2022                Respectfully submitted,

By:        /s/ *Rachel S. Brass*

GIBSON, DUNN & CRUTCHER LLP

RACHEL S. BRASS
  *Admitted Pro Hac Vice*
  rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

JOSHUA LIPTON (Lead Counsel)
  *Admitted Pro Hac Vice*
  jlipton@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500

JASON STERNBERG
   Fla. Bar No. 72887
   jasonsternberg@quinnemanuel.com
TARA MACNEILL
   Fla. Bar No. 1028931
   taramacneill@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Telephone: 305.439.500

*Counsel for Respondent LIV Golf, Inc.*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2022, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system and by email to:

*PGA European Tour*

| | |
|---|---|
| William P. Keane | Email: wkeane@fbm.com |
| Daniel A. Contreras | dcontreras@fbm.com |
| Janice W. Reicher | jreicher@fbm.com |

**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th FL
San Francisco, California 94104
Tel: (415) 954-4400

| | |
|---|---|
| R. Eric Bilik | ebilik@mcguirewoods.com |
| Kimberly T. Mydock | kmydock@mcguirewoods.com |

**MCGUIREWOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

*PGA Tour*

| | |
|---|---|
| John W. Keker | Email: jwk@kvn.com |
| Brook Dooley | bdooley@keker.com |
| Nicholas S. Goldberg | ngoldberg@keker.com |
| Thomas E. Gorman | tgorman@keker.com |
| Sophie A. Hood | shood@keker.com |
| Leo L. Lam | llam@keker.com |
| Robert A. Lauridsen | alauridsen@keker.com |
| Eric H. MacMichael | emacmichael@keker.com |
| Nicholas D. Marais | nmarais@keker.com |
| Elliot R. Peters | epeters@keker.com |
| David J. Silbert | dsilbert@keker.com |
| Kathleen Corey | kcorey@keker.com |

**Keker, Van Nest & Peters LLP**
633 Battery Street
San Francisco, CA 94111-1809

| | |
|---|---|
| Anthony J. Dreyer | anthony.dreyer@skadden.com |
| Karen H. Lent | karen.lent@skadden.com |
| Matthew M. Martino | matthew.martino@skadden.com |
| **Skadden, Arps, Slate, Meagher & Flom LLP** | |
| One Manhattan West | |
| New York, NY 10001 | |
| | |
| Patrick J. Fitzgerald | patrick.fitzgerald@skadden.com |
| **Skadden, Arps, Slate, Meagher & Flom LLP** | |
| 155 N. Wacker Drive, Suite 2700 | |
| Chicago, IL 60606 | |

                                            /s/ *Jason Sternberg*
                                                 Jason Sternberg